1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10
11   MYIESHA P.,[1]                       Case No.: 3:22-cv-01577-VET
12                        Plaintiff,      **ORDER ON JOINT MOTION**
13        v.
                                          **[Doc. No. 17]**
14   MARTIN O'MALLEY, Commissioner of
     the Social Security Administration,[2]
15                        Defendant.
16
17
18

## I.    INTRODUCTION

On October 13, 2022, Plaintiff Myiesha P. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for disability insurance benefits. Doc. No. 1. Specifically, in a written decision, the Administrative Law Judge ("ALJ") found that

---

[1]   Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g) (2022)] will refer to any non-government parties by using only their first name and last initial."

[2]   Martin O'Malley is substituted for Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

1

Plaintiff was not under a disability within the meaning of the Social Security Act ("Act"). AR 23–43.[3]

Before the Court is the parties' Joint Motion seeking resolution of the issues raised in Plaintiff's Complaint. Having considered the parties' arguments, applicable law, and the record before it, and for the reasons discussed below, the Court **VACATES** the Commissioner's final decision and **REMANDS** this case for further administrative proceedings consistent with this Order.

## II.   BACKGROUND

### A.   Procedural History

On June 27, 2019, Plaintiff applied for disability insurance benefits under Title II of the Act. AR 201–04. Based on mental and physical limitations, Plaintiff alleged disability beginning on July 13, 2017. AR 26, 201–04.

The Commissioner denied Plaintiff's application initially and on reconsideration. AR 102–06, 113–18. Plaintiff requested an administrative hearing, which ALJ Randolph Schum held on August 25, 2021. AR 107, 44–64. On September 27, 2021, the ALJ found that Plaintiff was not disabled from her alleged onset date, July 13, 2017, through her date last insured, December 31, 2020. AR 26–39. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. AR 1–6; 42 U.S.C. § 405(h).

### B.   Summary of the ALJ's Decision

The ALJ followed the Commissioner's five-step evaluation process to determine whether Plaintiff is disabled. *See generally* AR 26–38; *see also* 20 C.F.R. § 404.1520. At

---

[3] "AR" refers to the Administrative Record lodged on January 19, 2023. Doc. No. 12. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity from her alleged onset date of July 13, 2017 through December 31, 2020, the date last insured. AR 28. At step two, the ALJ found that Plaintiff had the following severe impairments: "mild degenerative disc disease of the midthoracic spine; axonal neuropathy of the left foot; obesity; anxiety; and depression." *Id.* At step three, the ALJ concluded that Plaintiff's physical and mental impairments did not meet or medically equal the severity of any impairment in the Commissioner's Listing of Impairments. AR 29–31.

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain physical limitations and the following mental functioning limitations:

> [T]he claimant was able to understand, remember, and carry out simple instructions and tasks; can respond appropriately to supervisors and coworkers in a task oriented setting where contact with others is casual and no more than occasional; and should not work in a setting which included constant or regular contact with the general public or more than occasional handling of customer complaints.

AR 31. In determining Plaintiff's RFC, the ALJ considered Plaintiff's symptoms, medical opinions, and prior administrative medical findings. AR 32–36. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence because the medical evidence did not support the alleged loss of functioning." AR 32. As part of the RFC assessment, the ALJ rejected the opinions of Dr. Sokley Khoi, who conducted a psychological disability evaluation on June 12, 2020. AR 35.

At step four, the ALJ concluded that through the date last insured, Plaintiff could not perform any past relevant work. AR 36–37. Finally, at step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national

economy, including light unskilled jobs such as inspector, hand packager, and subassembler. AR 37–38.

Accordingly, the ALJ found that Plaintiff was not under a disability, as defined by the Social Security Act, from July 13, 2017 through December 31, 2020, the date last insured. AR 38.

## III.   STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (substantial evidence is "more than a mere scintilla, but less than a preponderance"). A court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

The Court may not impose its own reasoning to affirm the ALJ's decision. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotations omitted). Thus, "review of an ALJ's fact-finding for substantial evidence is deferential, and the threshold for such evidentiary sufficiency is not high." *Id.* at 1159 (internal quotations omitted) (quoting *Biestek*, 587 U.S. at 103); *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) ("Overall, the standard of review is highly deferential.").

Lastly, the Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). "An error is harmless only if it is inconsequential to the ultimate

nondisability determination." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (internal quotations omitted).

## IV.   DISCUSSION

### A.   Whether the ALJ Properly Considered the Opinions of Examining Psychologist, Dr. Sokley Khoi

Under governing regulations, an ALJ evaluates the persuasiveness of each medical opinion by considering specified factors. 20 C.F.R. § 404.1520c(c)(1) – (5). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(b)(2). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (quoting *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)). "Supportability focuses on whether a medical source supports a medical opinion by explaining the relevant objective medical evidence." *Id.* An ALJ "must articulate how persuasive it finds all of the medical opinions from each doctor or other source, and explain how it considered the supportability and consistency factors in reaching these findings." *Id.*; *see also Kitchen*, 82 F.4th at 739 (explaining how an ALJ weighing a medical opinion must provide an explanation supported by substantial evidence, which articulates how they considered supportability and consistency). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Here, the ALJ found Dr. Khoi's medical opinions unpersuasive. AR 35–36. Based on a June 12, 2020 psychological disability evaluation, Dr. Khoi diagnosed Plaintiff with major depressive disorder and concluded that Plaintiff suffered from the following impairments: (i) mild impairment in ability to follow/remember complex/detailed instructions; (ii) mild impairment in ability to maintain adequate pace or persistence to perform simple repetitive tasks; (iii) moderate impairment in ability to maintain adequate pace or persistence to perform complex tasks; (iv) moderate impairment in ability to adapt to changes in job routine; (v) moderate to marked impairment in ability to withstand the

stress of a routine workday; and (vi) moderate to marked impairment in ability to interact with others on a regular basis. AR 874. Based on Plaintiff's clinical presentation and reported symptoms, Dr. Khoi further concluded that Plaintiff "appear[ed] to be experiencing symptoms of depression." AR 874. Dr. Khoi's evaluation consisted of a clinical interview, a mental status examination, and a review of certain medical records. AR 872.

The ALJ rejected Dr. Khoi's opinions as unpersuasive because they "relied too much on the claimant's subjective complaints" and were "unsupported by the medical record." AR 35. The ALJ cited one example: a February 2, 2021 record reflecting that Plaintiff was "doing well" on her current regimen of psychotropic medication and declined any adjustment. AR 35–36 (citing AR 1152). The ALJ further stated that "there was no support in the record for marked limitations in functionality." AR 36.

Plaintiff argues that the ALJ erred because he incorrectly recited Dr. Khoi's opinions, selectively focused on evidence, and Dr. Khoi's reliance on self-reports was not a legitimate reason for rejecting the opinions. Doc. No. 17 at 11–15. Defendant contends that the ALJ reasonably concluded that Dr. Khoi relied too heavily on Plaintiff's unreliable subjective complaints, points to other records supporting the ALJ's decision, and argues that the ALJ did not need to address Dr. Khoi's opinion on a limitation-by-limitation basis when he had substantial evidence to reject it as a whole. *Id.* at 17–21.

For the reasons discussed below, the Court finds that substantial evidence does not support the ALJ's conclusion that Dr. Khoi's opinions were unpersuasive.

### 1. Consistency

The ALJ failed to make an explicit finding concerning "consistency." However, based on context, the Court finds that the ALJ was addressing consistency, not supportability, when he concluded that Dr. Khoi's opinions were "unsupported by the medical record" and that "there was no support in the record for marked limitations in functionality." AR 35–36; *see also Woods*, 32 F.4th at 793 n.4 (finding that where ALJ described opinion as "not supported by the record," ALJ "plainly did not intend to make a

6

supportability finding" and instead meant that opinion was inconsistent with other record evidence).[4] Still, conclusory statements and citation to one medical record, without additional explanation, do not support rejecting Dr. Khoi's opinions, particularly considering the cited February 2021 record.

The February 2021 record is a Progress Note from Plaintiff's non-face-to-face telephonic visit with a Nurse Practitioner ("NP") on February 2, 2021. The ALJ's discussion of the February 2021 record suggests that Plaintiff was "doing well" on her current medication and declined an adjustment. AR 35. Relying presumably on this "doing well" reference, the ALJ next concludes that no support exists "in the record for marked limitations in functionality." AR 36. Except the entry in full reads: "Depression: On Venlafaxine ER 150mg. Doing well, no need to adjust at this time. As above, referred to Nicole for help finding community resources for Psychiatry." AR 1152. Moreover, elsewhere in the same record, the NP notes that Plaintiff sees a therapist weekly and requests psychiatry services. AR 1149. The NP therefore refers Plaintiff to "Nicole for help finding community resources as there are none through FemOwen." *Id.*

First, a single reference to Plaintiff "doing well" on her current medication regimen does not constitute substantial evidence, particularly as it relates to mental health. "[D]oing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity." *Garrison*, 759 F.3d at 1017.

Second, when evaluated in full, the same record shows that Plaintiff sought psychiatry services and the NP referred her to another party for assistance in obtaining those services. Because the ALJ does not cite any other records or comment on Plaintiff's request for psychiatry services, it is unclear to the Court why the ALJ disregards and attaches no significance to Plaintiff's need for psychiatry services.

---

[4]   "[T]o avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision." *Woods*, 32 F.4th at 793 n.4

Moreover, the ALJ's analysis of the consistency factor is inherently flawed. As Plaintiff correctly notes, the ALJ attributes certain opinions to Dr. Khoi that are not reflected in the evaluation. For instance, according to the ALJ, Dr. Khoi opined that Plaintiff had a "moderate-to-marked limitation" in "concentrating, persisting, or maintaining pace" and "adapting or managing oneself." AR 35. It is unknown where these purported opinions originate given that Dr. Khoi does not express those opinions. *See* AR 874 (listing Dr. Khoi's impairment opinions). In fact, Dr. Khoi reaches a different conclusion regarding Plaintiff's "ability to maintain adequate pace or persistence," finding a "moderate" limitation as to complex tasks but only a "mild" limitation concerning simple repetitive tasks. *Id.* Because the ALJ did not accurately characterize Dr. Khoi's opinions and misattributes opinions to Dr. Khoi, it is not evident to the Court that the ALJ considered the opinions actually expressed by Dr. Khoi, precluding a meaningful review of the ALJ's decision.

Lastly, the Court rejects the Commissioner's efforts to supplement the ALJ's consistency analysis with a post-hoc analysis of records not cited or relied on by the ALJ. *See* Doc. No. 17 at 18. This Court "can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024). "This means that courts can consider only the reasons the ALJ asserts." *Id.* (internal quotations omitted). This Court will not invite error by considering records not considered by the ALJ in rejecting Dr. Khoi's opinions. *Id.* ("district court erred by affirming the ALJ's determination for a reason that the ALJ did not assert"); *see also Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

In short, the ALJ lacks substantial evidence that Dr. Khoi's opinions are inconsistent with the record.

## 2.    Supportability

The ALJ similarly failed to explicitly address the supportability factor. In contrast to the consistency factor, the Court cannot readily discern from the written decision whether the ALJ conducted a supportability analysis. The ALJ's failure to make any findings concerning supportability is error. *See Jesse D. v. Kijakazi*, No. 21-cv-04233-BLF, 2022 U.S. Dist. LEXIS 128844, at *21–22 (N.D. Cal. July 20, 2022) (substantial evidence did not support ALJ's rejection of medical opinion where the ALJ "failed to engage with [doctor's] assessment in any meaningful sense and made only a passing assessment of the 'supportability' and 'consistency' factors").

The Commissioner treats the ALJ's conclusion that Dr. Khoi "relied too much on Plaintiff's subjective complaints" as an analysis of the supportability factor. *See* Doc. No. 17 at 17; *see also* AR 35. Even if the Court construes this statement as such, the ALJ's conclusion that Dr. Khoi relied "too much" on Plaintiff's subjective complaints is not supported by substantial evidence.

"A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). This rule, however, "does not apply in the same manner to opinions regarding mental illness," where diagnoses "always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Id.* Thus, clinical interviews and mental status evaluations are "objective measures and cannot be discounted as a 'self-report.'" *Id.*

Here, Dr. Khoi relied on a clinical interview (which necessarily includes Plaintiff's self-reported symptoms), a mental status examination, and a review of available medical records. AR 872. Dr. Khoi's clinical interview and mental status exam are objective measures on which Dr. Khoi properly relies. *See Buck*, 869 F.3d at 1049 (holding that doctor's reliance on claimant's self-reported symptoms, in addition to clinical interview and mental status evaluation, was not a reason to reject his opinion); *Nygren v. Saul*, 854 F. App'x 874, 876 (9th Cir. 2021) ("In the context of mental health evaluations, a

physician's reliance on self-reported symptoms is thus not a legitimate reason to reject a physician's opinion."). Nevertheless, the Commissioner contends that the ALJ "reasonably concluded that Dr. Khoi relied heavily on Plaintiff's subjective complaints because her mental status exam was largely normal." Doc. No. 17 at 17. The Commissioner further argues that the ALJ also "explained that Dr. Khoi's marked limitations appeared to be based heavily on Plaintiff's less than reliable subjective complaints due to the mostly benign mental status exam findings." *Id.* at 19.

The Court is not persuaded by the Commissioner's arguments because the ALJ offers no such explanations. *See* AR 35–36. His written decision offers no analysis concerning why or even what part of Dr. Khoi's evaluation suffers from over reliance on Plaintiff's self-reports. *Id.* And contrary to the Commissioner's assertions, the ALJ does not discuss Dr. Khoi's "mental status exam findings" or how those compare to Plaintiff's self-reports. Under these circumstances, the Court has no basis to conclude that it was appropriate to reject Dr. Khoi's opinions for relying "too much" on Plaintiff's subjective complaints.

In sum, the ALJ did not make specific findings regarding the supportability factor, and the only finding that might be interpreted as analyzing "supportability" is not supported by substantial evidence. For this reason, the ALJ erred. *Nygren*, 854 F. App'x at 876 ("To the extent that the ALJ discredited Dr. Wilkinson's opinion because it was based on Nygren's self-report, that is a reversible error.").

### 3. The ALJ's Error in Weighing Dr. Khoi's Opinion Was Not Harmless

The ALJ's error in evaluating Dr. Khoi's opinion was not harmless because it was not "inconsequential" to the ultimate disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). If the ALJ had credited Dr. Khoi's opinions, the mental impairments articulated by Dr. Khoi, including a moderate to marked impairment in her abilities to withstand the stress of a routine workday and interact with others, could have reduced Plaintiff's RFC. In turn, a reduced RFC would have impacted the vocational expert's testimony and his analysis of available jobs in the national economy

10

that Plaintiff could perform. *See* AR 59–60 (answering hypothetical question based on Plaintiff's limitations and identifying jobs in national economy available to Plaintiff); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("Hypothetical questions posed to a VE must set out all the limitations and restrictions of the particular claimant. If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (citations and internal quotation marks omitted). Indeed, the VE testified that an individual who needed to work alone "would not be consistent with maintaining competitive employment." AR 62. As such, the Court cannot conclude that the ALJ's error was harmless.

## B.   Whether the ALJ Erred in Rejecting Plaintiff's Symptom and Limitation Testimony Concerning Her Mental Impairments

Determining whether a claimant's subjective symptom testimony is credible involves a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (quoting *Garrison*, 759 F.3d at 1014). As part of this analysis, "the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (citation and internal quotations omitted). "Nor must a claimant produce objective medical evidence of the [symptom] itself, or the severity thereof." *Id.* (citation and internal quotations omitted).

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (citation omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the

power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id.* (citation omitted). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work . . . ." *Id.* "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson*, 95 F.4th at 1199 (citation omitted).

Here, the ALJ found that Plaintiff's mental impairments— anxiety and depression— could reasonably be expected to produce some degree of Plaintiff's alleged symptoms. AR 28, 32. However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence because the medical evidence did not support the alleged loss of functioning." AR 32. There was no evidence or finding of malingering. *See generally* AR 26–39. Accordingly, the ALJ was required to articulate specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the severity of her symptoms.

Plaintiff argues that the ALJ failed to meet this clear and convincing standard in rejecting Plaintiff's testimony concerning the severity of mental impairments. Doc. No. 17 at 34. The Court agrees.

### 1.    Plaintiff's Testimony Concerning Mental Impairments

At the administrative hearing, Plaintiff testified that she suffered from depression and anxiety, which made it hard to get out of bed and bathe. AR 54. She reported difficulty with recall, including completing thoughts and sentences because she cannot focus, and feeling uncomfortable in public settings. *Id.* She testified to becoming suicidal after her mother passed away and discovering she contracted HIV. AR 55. Plaintiff also reported difficulty in engaging and communicating with other people and that she cannot absorb information. AR 55, 57. She further testified to feeling angry and frustrated and often being alone, as she only has relationships with her therapist and doctor. AR 58. She attends therapy weekly and was hospitalized in the past. AR 55.

### 2.   The ALJ Failed to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Testimony

The ALJ discredited Plaintiff's mental health testimony on the grounds that (i) Plaintiff's "mental impairments showed stability and control" and (ii) her testimony regarding the severity of her symptoms was inconsistent with the "objective evidence of record." AR 34. In support of the former, the ALJ identifies improvements in Plaintiff's condition at various points in 2019, which the ALJ attributes to medication, and highlights two records from 2020 and 2021 to suggest that Plaintiff's depression was connected to her homelessness. *Id.* In support of the latter, the ALJ cites the February 2021 record that indicates Plaintiff is "doing well" and Plaintiff's request for a referral to a reproductive endocrinology clinic to begin the process of getting pregnant. *Id.* None satisfy the clear and convincing standard.

First, a review of the record demonstrates that the ALJ seemingly singled out a few periods of temporary well-being and relied on those instances to discredit Plaintiff. However, "treatment records must be viewed in light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (superseded by statute on other grounds). And in the context of mental health issues, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citation omitted). Reports of improvement must "be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.*

For instance, the ALJ cites records from February and March 2019 that supposedly demonstrate Plaintiff's stability and control. AR 34. Except records from April 2019 (a month later) note that Plaintiff's condition had "evolved into major depressive disorder,"

13

with Plaintiff experiencing significant cognitive distortion of self-blame and struggling with hopelessness. AR 483. Records from July 2019 describe her feelings of depression as overwhelming and debilitating. AR 510. Moreover, additional records from 2019 show that providers repeatedly adjusted Plaintiff's medications and dosages in attempts to alleviate her symptoms and side effects. *See, e.g.*, AR 405, 409, 502, 500, 509, 512, 527, 745, 880, 868.

Moreover, some of Plaintiff's symptoms persisted (e.g., bouts of depression, feelings of hopelessness), and throughout 2019, she remained a medium risk for suicide or serious self-injury. AR 493, 500, 508, 519, 526. Plaintiff's diagnosis of depression also remained constant in 2019. AR 500, 509, 519, 526. Plaintiff's depression continued through 2020 and 2021. AR 779, 863, 874, 980, 1085, 1152, 1114.

Given this record, the ALJ erred in concluding that periods of temporary improvement in Plaintiff's mental health symptoms undermined her testimony or was otherwise inconsistent with disabling mental impairments. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Second, for the same reasons discussed previously, the Court is not persuaded that the February 2021 record is inconsistent with Plaintiff's testimony as a whole and sufficient to support rejecting her testimony. Although the record refers to Plaintiff "doing well," it also confirms that Plaintiff continues to suffer from depression, sees a therapist weekly, and needs psychiatry services. *See* 1149, 1152.

Third, the conclusion that Plaintiff's depression was connected to her "homelessness situation" indicates that the ALJ tied Plaintiff's symptoms directly to her housing situation. *See* AR 34. The ALJ failed to delineate between Plaintiff's housed and unhoused periods when evaluating Plaintiff's testimony. Instead, the ALJ rejected all of Plaintiff's testimony based on evidence close in time to when Plaintiff's "housing issues were nearly resolved." *Id.* This was error. *See Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021) (ALJ erred

14

by disregarding all of plaintiff's testimony, including portions about his early-period incapacity, based on inconsistencies that only applied to late-period testimony).

Lastly, the ALJ erred in finding that Plaintiff's interest in pregnancy is "inconsistent with allegations of someone so consumed by her mental impairments that she could not focus on any other aspect of her life." AR 34. As an initial matter, the Court notes that Plaintiff did not testify that "she could not focus *on any other aspect of her life*," and therefore it is unclear what testimony the ALJ takes issue with in reaching this conclusion. Still, an interest in pregnancy is not inconsistent with a disabling mental impairment.

While the *activity of taking care* of family may provide a clear and convincing reason to discredit certain testimony, by itself, "motherhood and disability are not mutually exclusive conditions." *See Marquita Marie Q. v.* Saul, No. 19-cv-01280-KSC, 2020 U.S. Dist. LEXIS 223232, at *22 (S.D. Cal. Nov. 30, 2020); *compare Rollins. v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that the daily activities of taking care of two young children and maintaining a household were inconsistent with a plaintiff's pain testimony about her disabling impairments from fibromyalgia). Furthermore, "a disability claimant need not 'vegetate in a dark room' in order to be deemed eligible for benefits." *Reddick*, 157 F.3d at 722 (quoting *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)). Nor should disability claimants "be penalized for attempting to lead normal lives in the face of their limitation." *Id.* That is especially true here, where Plaintiff simply expressed an interest in becoming pregnant during a routine medical visit, but never actually followed up on the referral. AR 1107.

In short, the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's testimony concerning her mental impairments.

### 3. Rejection of Plaintiff's Testimony Was Not Harmless Error

When an ALJ fails to provide clear and convincing reasons for rejecting a claimant's testimony, he fails to provide enough "reasoning . . . to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence," which the Court cannot treat as harmless. *Lambert*, 980 F.3d at 1278. Because Plaintiff's testimony could support

15

a reduced RFC, impacting the disability determination, the ALJ's rejection of Plaintiff's testimony was not harmless.

## V.   CONCLUSION

For the foregoing reasons, the Court hereby **VACATES** the Commissioner's final decision and **REMANDS** this case for further administrative proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated:  September 5, 2024

_____
Honorable Valerie E. Torres
United States Magistrate Judge

3:22-cv-01577-VET